IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**DORIS ANN FRANCIS,** :
    Plaintiff : No. 1:24-cv-02017
:
    v. : (Judge Kane)
:
**HUMANA, INC.,** :
    Defendant :

## MEMORANDUM

Before the Court is a motion to dismiss Counts I and II of Plaintiff Doris Ann Francis ("Plaintiff")'s complaint filed by Defendant Humana, Inc. ("Defendant"). (Doc. No. 4.) For the reasons that follow, the Court will grant the motion.

**I.   BACKGROUND**

    **A.   Factual Background**[1]

Plaintiff is an adult individual who resides at Country Meadows Senior Living at 459 Sand Hill Road, Hershey, Dauphin County, Pennsylvania, 17033. (Doc. No. 1-1 at 8 ¶ 1.) Defendant is a corporation that regularly conducts business in Dauphin County, Pennsylvania, is registered to do business in Pennsylvania, and has a principal place of business located at 120 Interstate North Parkway SE, Building 100, Atlanta, Georgia, 30339. (Id. at 8 ¶ 2.) Plaintiff avers that "[m]any, many years ago," she purchased Humana Preventative Plus Dental Insurance Policy #0000025268402 (hereinafter "Humana Preventative Dental Policy") from Defendant when she was a resident of Clinton, Mississippi, and the most recent monthly premium was $19.99 per month. (Id. at 8 ¶¶ 3–4.) At the time of filing her complaint, Plaintiff was ninety-two (92) years of age, having been born on October 2, 1932. (Id. at 8 ¶ 9.)

---

[1] The factual background is drawn from Plaintiff's complaint (Doc. No. 1-1 at 5–16), the allegations of which the Court accepts as true for purposes of the pending motion to dismiss. See Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017).

Plaintiff's husband died on January 4, 2023, causing Plaintiff to move, on or about April 24, 2024, to Hershey, Pennsylvania to be near her daughter. (Id. at 9 ¶ 6.) Plaintiff wanted to keep her Humana Preventative Dental Policy, even after her move to Pennsylvania from Mississippi. (Id. at 9 ¶ 7.) Plaintiff alleges that she contacted Defendant and, per Defendant's agent's instruction in early May 2024, submitted a completed Pennsylvania application to Defendant (hereinafter "Plaintiff's May 2024 Dental and Vision Application"). See (id. at 9 ¶ 8) (citing Doc. No.1-1 at 18).[2] Plaintiff's May 2024 Dental and Vision Application lists her Hershey, Dauphin County, Pennsylvania address and requests coverage in Pennsylvania beginning June 1, 2024. (Id. at 9 ¶ 9.) Plaintiff alleges that she was advised by Defendant's agent that the Pennsylvania premium was also $19.99 per month. (Id. at 9 ¶ 10.) Plaintiff maintains that she "consistently, without interruption, and on a timely basis, made all monthly premium payments in the amount of $19.99, which premium payments have been retained by [Defendant]." (Id. at 9 ¶ 11.) Plaintiff alleges that Defendant rejected her May 2024 Dental and Vision Application for the following two reasons: (1) the application stated "moved out of state" and not "state to state transfer," and (2) the "reinstatement/reapplication" box was checked and not the "change/modification to existing coverage" box. (Id. at 9 ¶ 12.)

Plaintiff claims that, on July 29, 2024, she submitted a second Pennsylvania application (hereinafter "July 2024 Dental and Vision Application") with the changes and/or corrections requested by Defendant in Defendant's previous rejection, and requested coverage as of June 1, 2024. See (id. at 9–10 ¶ 13) (citing Doc. No. 1-1 at 20). Plaintiff maintains that "no new policy, policy number, or confirmation of Pennsylvania dental coverage" was issued to her by

---

[2] Plaintiff's application is undated, but Plaintiff's complaint refers to this as her "May 2024 Pennsylvania Dental Application." (Doc. No. 1-1 at 9.)

Defendant. (Id. at 10 ¶ 14.) Thereafter, in August 2024, Plaintiff alleges that she called Defendant and was told by an agent of Defendant that "her coverage was in process, her address had been changed[,] and she would soon receive confirmation of Pennsylvania dental coverage." (Id. at 10 ¶ 15.) Plaintiff maintains that she received no policy coverage or confirmation from Defendant after this call. (Id. at 10 ¶ 16.)

Plaintiff asserts that on September 16, 2024, she asked her daughter (her lawful agent) to call Defendant because Plaintiff needed to see a dentist and had no confirmation of Pennsylvania dental coverage. (Id. at 10 ¶ 17.) Plaintiff states that her daughter called Defendant at 866-537-0232 and spoke to Nicole, an agent of Defendant. (Id. at 10 ¶ 18.) Plaintiff alleges that the call took forty-eight (48) minutes and included the involvement of a second agent. (Id. at 10 ¶ 19.) Plaintiff remarks that the "net result" of the phone call was that her daughter was told that Plaintiff was at fault for not cancelling Plaintiff's Mississippi policy and that "a state to state transfer needs to be done." (Id. at 10 ¶ 20.) Plaintiff further asserts that Nicole told Plaintiff's daughter that she, Nicole, was "not allowed to change an address 'at her level.'" (Id. at 10 ¶ 21.) Plaintiff maintains that an agent of Defendant[3] told her daughter that Plaintiff has to go through the "'sales department at 877-499-6485' and speak with a 'licensed agent'" to change Plaintiff's address. (Id. at 10 ¶ 22.) Plaintiff claims that she "made it clear in May that she needs a Pennsylvania policy and she will never return to Mississippi." (Id. at 11 ¶ 23.)

Plaintiff alleges that on or about September 24, 2024, she received a letter from Defendant, dated September 18, 2024, stating that Defendant was "'unable to process the application due to the reason listed below.'" See (id. at 11 ¶ 24) (quoting Doc. No. 1-1 at 22

---

[3] It is unclear from Plaintiff's complaint if Plaintiff is referring to Nicole or to the second agent that assisted Plaintiff's daughter. See (Doc. No. 1-1 at 10).

3

(September 18, 2024 Letter)). She maintains that the letter "lists no information or request for information." (Id. at 11 ¶ 25.) The reason listed is "Missing Required Information." (Id. at 22.) Plaintiff claims that the letter gave her the option of calling Defendant, "but she had already done that multiple times (once through her daughter)." (Id. at 11 ¶ 26.)

### B.  Procedural Background

On October 18, 2024, Plaintiff filed a complaint against Defendant in the Court of Common Pleas of Dauphin County, Pennsylvania. (Doc. No. 1-1 at 5–16.) The complaint was served upon Defendant via process server on October 22, 2024. (Id. at 4.) Plaintiff's complaint alleges the following four (4) claims: violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (hereinafter "UTPCPL") (Count I); fraud (Count II); breach of contract (Count III); and quantum meruit (Count IV). (Id. at 11–16 ¶¶ 27–49.)

On November 20, 2024, Defendant filed a Notice of Removal to this Court on the basis of diversity jurisdiction. (Doc. No. 1.) Thereafter, on November 27, 2024, Defendant filed a motion to dismiss accompanied by a brief in support, arguing that Counts I and II of Plaintiff's complaint should be dismissed. (Doc. Nos. 4–5.) On December 11, 2024, Plaintiff filed a brief in opposition to the motion. (Doc. No. 7.) Defendant did not file a reply brief. Having been fully briefed, Defendant's motion to dismiss Counts I and II is ripe for disposition.

### II.  LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled

to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 312 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  See id.  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit ("Third Circuit") has identified the following steps a district court must take under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at

679).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

## III.   DISCUSSION

As noted supra, Defendant seeks dismissal of Plaintiff's UTPCPL claim (Count I) and the fraud claim (Count II). As to Count I, Defendant argues that Plaintiff fails to allege that Defendant acted in a manner which had the tendency or capacity to deceive, and further fails to aver that she suffered concrete harm as a result of her reliance on Defendant's purported actions. As to Count II, Defendant asserts that Plaintiff fails to state a claim upon which relief may be granted because Plaintiff fails to allege that Defendant acted with the prerequisite intent to deceive necessary to recover pursuant to Federal Rule of Civil Procedure 9(b). The Court addresses each argument in turn.

### A.   Plaintiff's UTPCPL Claim

The UTPCPL is a Pennsylvania statute that applies to "unfair or deceptive acts or practices in the conduct of any trade or commerce." See 73 Pa. Cons. Stat. § 201-3(a). The statute generally prohibits "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." See Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145, 154 (Pa. Super. Ct. 2012) (quoting 73 Pa. Cons. Stat. § 201-2(4)(xxi)). The UTPCPL provides twenty (20) "unfair or deceptive" practices, see 73 Pa. Cons. Stat. § 201-2(4)(i)–(xx), as well as a "catch-all provision" that generally prohibits other fraudulent and

6

deceptive conduct, see id. 73 PA. CONS. STAT. § 201-2(4)(xxi).  The statute "is to be liberally construed to effectuate its objective of protecting the consumers of [Pennsylvania] from fraud and unfair or deceptive business practices."  See Ash v. Cont'l Ins. Co., 932 A.2d 877, 881 (Pa. 2007); see also Bennett, 40 A.3d at 154 (recognizing a lower pleading standard under the UTPCPL catch-all provision than for common law fraud).

Under the catch-all provision, "a showing of deceptive activity, as opposed to establishing the elements of a common law fraud claim, is sufficient to impose liability." See Wilson v. Parisi, 549 F. Supp. 2d 637, 666 (M.D. Pa. 2008).  To establish liability under the catch-all provision, a plaintiff must present evidence showing: "(1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss."  See Slapikas v. First Am. Title Ins. Co., 298 F.R.D. 285, 292 (W.D. Pa. 2014) (citing Seldon v. Home Loan Servs., Inc., 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009)).  Pennsylvania law requires that a "plaintiff alleging violations of the UTPCPL must prove justifiable reliance."  See Toy v. Metro. Life Ins. Co., 928 A.2d 186, 202 (Pa. 2007); Weinberg v. Sun Co., 777 A.2d 442, 446 (Pa. 2001) (interpreting the UTPCPL's causation provision to demand a showing of justifiable reliance and not simply a causal connection); Hunt v. U.S. Tobacco Co., 538 F.3d 217, 224 (3d Cir. 2008) (stating that the justifiable reliance requirement applies to all substantive subsections of the UTPCPL); Simply put, "[t]o bring a private cause of action under the [UTPCPL], a plaintiff must show that [s]he justifiably relied on the defendant's wrongful conduct or representation and that [s]he suffered harm as a result of that reliance."  See Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004) (citing Weinberg, 777 A.2d at 446).  "For pleading purposes, the complaint must establish that, had the plaintiff known of the deceptive conduct, he would have

7

acted differently." Seplow v. Closing Pro, Inc., No. 23-cv-03628, 2024 WL 649260, at *5 (E.D. Pa. Feb. 15, 2024).

In arguing that Plaintiff's UTPCPL claim is subject to dismissal, Defendant asserts that Plaintiff "fails to allege that [Defendant] acted in a manner which had the tendency or capacity to deceive, and further fails to aver that she suffered concrete harm as a result of her reliance on [Defendant]'s purported actions." (Doc. No. 5 at 1–2.) Defendant also argues that Plaintiff "does not, and cannot, allege that she ever contacted [the specific phone number provided by Defendant] to proceed with the processing of her application." (Id. at 3.) Defendant maintains that, "in essence," Plaintiff's claim constitutes a claim under the catch-all provision because Defendant claims that Plaintiff's complaint includes "a one paragraph (but otherwise unsupported) assertion that [Defendant]'s customer service agents also violated [73 PA. CONS. STAT. § 201-2(4)(ii), (xi), (xii), and (xiv)]."[4] (Id. at 5 n.2.) Defendant claims that Plaintiff's

---

[4] In addition to the catch-all provision (73 PA. CONS. STAT. § 201-2(4)(xxi)), Plaintiff cites to the following subsections:

> (ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
> . . .
> (xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;
>
> (xii) Promising or offering prior to time of sale to pay, credit or allow to any buyer, any compensation or reward for the procurement of a contract for purchase of goods or services with another or others, or for the referral of the name or names of another or others for the purpose of attempting to procure or procuring such a contract of purchase with such other person or persons when such payment, credit, compensation or reward is contingent upon the occurrence of an event subsequent to the time of the signing of a contract to purchase;
> . . .
> (xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;

allegations, even when taken as true, "do not establish that [Defendant] engaged in any false or deceptive conduct when [Plaintiff] contacted the customer service agents, and further fails to establish that [] [Plaintiff] justifiably relied upon [Defendant]'s purported actions to sustain an ascertainable loss." (Id. at 4.)

First, as to whether the alleged conduct had the capacity or tendency to deceive, Defendant states that:

> Plaintiff fails to sufficiently allege any particular conduct that has either the capacity or tendency to deceive. Rather, Plaintiff claims that the acts, omissions, and so-called (but wholly unsupported) "fraudulent" conduct by [Defendant]'s customer service agents created a likelihood of confusion or misunderstanding. In essence, this constitutes a claim under the UTPCPL's catch[-]all provision, which requires a [p]laintiff to adequately plead some form of deceptive conduct. Boehm v. Riversource Life Ins. Co., 117 A.3d 308, 324 (Pa. Super. [Ct.] 2015).

See (id. at 5) (internal footnotes omitted). Further, Defendant argues that Plaintiff's "boilerplate allegations of allegedly improper conduct do not establish that [Defendant] acted deceptively," noting that Defendant informed Plaintiff as to the status of her application and as to what information Plaintiff needed to provide. (Id. at 6.) Defendant maintains that, at best, Plaintiff's allegations suggest that there was some kind of misunderstanding, and the allegations do not demonstrate that Defendant's agents "intentionally gave Plaintiff a false impression or otherwise recklessly provided advice with an intent to deceive Plaintiff." See (id.) (emphasis in original).

Second, Defendant claims that, even if Plaintiff sufficiently pleaded that Defendant engaged in some form of deceptive conduct, Plaintiff must also allege that she justifiably relied on Defendant's actions with regard to her insurance policy. (Id. at 7.) As to justifiable reliance, Defendant maintains that Plaintiff fails to plead "even a basic set of facts" tending to show that

---

See (Doc. No. 1-1 at 12 ¶ 30) (citing 73 PA. CONS. STAT. § 201-2(4)(ii), (xi), (xii), and (xiv)).

9

she relied upon the alleged conduct of Defendant's agents. (Id.) Defendant notes that Plaintiff pleads that she was already a long-time customer prior to her move and continued to make premium payments on her Mississippi policy—and claims that Plaintiff did not specifically plead that she engaged in some detrimental activity. (Id.) Therefore, Defendant contends that Plaintiff's UTPCPL claim fails because "she has not adequately plead justifiable reliance resulting in an ascertainable loss." (Id. at 8.)

In response, Plaintiff states that she is not required to prove all elements of a prima facie case to survive a motion to dismiss, and that a higher standard of proof is more appropriate for a motion for summary judgment. (Doc. No. 7 at 5–6, 10–11.) Plaintiff argues that Defendant's conduct was deceptive because Defendant "has intentionally and knowingly never given [Plaintiff] a reason for her application being 'slow played' or 'rejected[,]'[] but [Defendant] continued to intentionally and knowingly take her premium payments." See (id. at 8) (emphasis in original). Plaintiff claims that this conduct "is a very unfair, deceptive and confusing business practice, especially when the consumer is a trusting, naïve, elderly, existing insured." (Id.) As to the element of justifiable reliance, Plaintiff asserts that she relied "totally on [the agents'] instructions and promises," and that "[h]er reliance was such that she continued to pay premiums," which she claims is an ascertainable loss. (Id. at 10.)

Upon consideration of the complaint, the parties' briefing, and relevant authority, and taking all allegations in the complaint to be true, the Court finds that Plaintiff fails to sufficiently allege that Defendant engaged in deceptive acts in violation of the catch-all provision and the other cited subsections of the UTPCPL. Further, Plaintiff also fails to allege that she justifiably relied upon such acts. Plaintiff's complaint alleges the following conduct by Defendant:

> 29. The aforesaid actions and/or inactions of [Defendant], a) are false and misleading; b) constitute fraudulent and/or deceptive conduct; c) created a

10

likelihood of confusion and/or of misunderstanding on the part of [Plaintiff]; and d) constitute a failure to comply with the terms of oral and written guarantees.

30. The aforesaid actions and/or inactions of [Defendant], constitute violations of 73 P.S. §201-2(4)(ii), (xi), (xii),. (xiv) and (xxi) known as the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

31. [Plaintiff] has properly applied for Pennsylvania Dental insurance coverage, [Plaintiff] has been promised Pennsylvania Dental Insurance coverage, continues to pay monthly premiums, and has suffered an ascertainable loss of premium dollars and coverage as a result of the use by [Defendant] and/or its representatives, employees and agents, of methods acts and/or practices declared unlawful by the [UTP]CPL which included, but are not limited to, the following:

   a. Claiming that the application submitted in May of 2024 was incomplete, improper, defective and/or could not be acted upon by [Defendant];

   b. Claiming that the application submitted on July 29, 2024 was incomplete, improper, defective and/or could not be acted upon by [Defendant];

   c. Verbally telling [Plaintiff] in August of 2024 that her address had been changed and that she would soon be awarded coverage or receive a policy;

   d. Advising [Plaintiff's] daughter that [Plaintiff] needed to cancel the Mississippi policy;

   e. Advising [Plaintiff's] daughter that only a "licensed agent" in the sales department could change an address;

   f. Issuing a letter to [Plaintiff] advising her that [Defendant] was unable to process the application due to the reason listed on the letter, but providing no reason;

   g. Failing to adhere to the terms of its verbal and written representations and guarantees;

   h. Engaging in fraudulent and/or deceptive billing practices which created a likelihood of confusion and misunderstanding;

   i. Engaging in fraudulent and/or deceptive conduct which created a likelihood of confusion and misunderstanding by processing [Plaintiff's] premium payments without providing coverage;

   j. Accepting [Plaintiff's] monthly premium payments while refusing dental coverage; and

> k. Ignoring both applications.
>
> 32. As a result of the conduct set forth above, [Plaintiff] has suffered damages as described herein.

See (Doc. No. 1-1 at 12–13 ¶¶ 29–32).

These allegations are conclusory in nature and lack facts to support that Defendant's agents engaged in fraudulent or deceptive conduct. The only two allegations that allege deceptive conduct that created a likelihood of confusion or misunderstanding—"[e]ngaging in fraudulent and/or deceptive billing practices . . ." and "[e]ngaging in fraudulent and/or deceptive conduct . . ."— are blanket assertions that are not supported by facts suggesting that Defendant's agents intentionally engaged in deceptive conduct. See (Doc. No. 1-1 at 12–13 ¶¶ 31(h)–(i)). These conclusory allegations are insufficient to plausibly allege fraudulent conduct. See Monck v. Progressive Corp., No. 15-cv-00250, 2015 WL 1638574, at *7 (M.D. Pa. Apr. 13, 2015) (holding that conclusory allegations of alleged wrongdoing and related reliance lack the specificity required to survive a motion to dismiss); Edwards v. Monumental Life Ins. Co., No. 17-cv-05260, 2017 WL 6327573, at *4 (E.D. Pa. Dec. 11, 2017) (holding that conclusory allegations of "engaging in fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding" without alleging facts of the deceptive conduct is insufficient to defeat a motion to dismiss); Phillips v. State Farm Mut. Auto. Ins. Co., No. 14-cv-01919, 2015 WL 3454537, at *3 (M.D. Pa. May 29, 2015) (finding that a blanket assertion that conduct "constitutes deceptive conduct under the UTPCPL is an unsupported legal conclusion" is insufficient to overcome a motion to dismiss). Plaintiff's complaint simply fails to plausibly allege that Defendant engaged fraudulent or deceptive conduct and that Defendant's conduct is likely to deceive a consumer under similar circumstances—specifically as to Plaintiff's averment that she was already paying a monthly premium prior to her conversations with Defendant's

agents. See Walkup v. Santander Bank, N.A., 147 F. Supp. 3d 349, 361 (E.D. Pa. 2015) (granting a motion to dismiss where a UTPCPL claim was not supported by "enough factual specificity to demonstrate a plausibility of success").

Plaintiff also fails to plausibly allege another required element of a UTPCPL claim that she justifiably relied upon Defendant's alleged conduct. See Hunt, 538 F.3d at 222 (stating that all UTPCPL subsections require a showing of justifiable reliance); Weinberg, 777 A.2d at 446 (stating that a plaintiff asserting a UTPCPL claim "must allege reliance"). In her opposing brief, Plaintiff claims that she relied "totally on [the agents'] instructions and promises" and is entitled to reasonable inferences. (Doc. No. 7 at 10.) Although Plaintiff correctly notes that she is entitled to reasonable inferences, there is no "presumption of reliance" under Pennsylvania law because Plaintiff "must prove justifiable reliance affirmatively." See Hunt, 538 F.3d 217 at 227. Plaintiff's complaint fails to allege that, "had the plaintiff known of the deceptive conduct, [s]he would have acted differently." See Seplow, 2024 WL 649260, at *5; see also Walkup, 147 F. Supp. 3d at 362 (granting a motion to dismiss when a plaintiff failed to articulate "a factually plausible account of their extensive reliance on [d]efendants' conduct"). In short, Plaintiff's complaint fails to allege facts supporting a plausible inference that she relied to her detriment on Defendant's representations. Because justifiable reliance is a necessary element for a UTPCPL claim under any subsection, the Court will grant Defendant's motion to dismiss as to Plaintiff's UTPCPL claim (Count I) and afford Plaintiff leave to amend her complaint in an attempt to cure the deficiencies outlined herein in regard to her UTPCPL claim.

    **B.**    **Plaintiff's Fraud Claim**

To state a cause of action for fraud under Pennsylvania law, a plaintiff must establish five elements: "(1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the

13

maker that the recipient will thereby be induced to act; (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damage to the recipient as the proximate result." See Brindle v. W. Allegheny Hosp., 594 A.2d 766, 768 (Pa. Super. Ct. 1991). Federal Rule of Civil Procedure 9(b) provides that in order to allege a claim of fraud, "a party must state with particularity the circumstances constituting fraud or mistake." See Fed. R. Civ. P. 9(b); see also Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (holding that Rule 9(b) requires "sufficient particularity to place the defendant on notice of the 'precise misconduct with which it is charged'"). Further, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." See id.

In arguing that Plaintiff's fraud claim is subject to dismissal, Defendant argues that Plaintiff's "threadbare allegations fail to establish that [Defendant] acted with the prerequisite intent to deceive necessary to recover under a theory of fraud." (Doc. No. 5 at 2.) Defendant maintains that Plaintiff's complaint "does little more than recite the elements of fraud necessary for recovery," and presumes that her phone calls with Defendant's agents "about her pending application were 'knowingly, intentionally, and willfully made with the intent to induce [Plaintiff] to continue paying premiums without coverage.'" See (id. at 9) (citing Doc. No. 1-1 at 14 ¶ 35). Defendant further asserts that:

> Plaintiff's threadbare recitals of the elements of fraud, bald assertions unsupported by the facts alleged, and legal conclusions throughout the Complaint fail to adequately state a claim for "fraud" against [Defendant]. Plaintiff has failed to adequately demonstrate that [Defendant] made any material misrepresentation; in fact, agents informed her that her application was pending and that statement was reiterated when she received a letter explaining the same. Even if Plaintiff could demonstrate that there had been a misrepresentation, she has not plead any facts which demonstrate that [Defendant] acted with reckless disregard and/or a specific intention to induce Plaintiff to continue making premium payments under her longstanding Mississippi policy.

See (id.). On that basis, Defendant argues that such threadbare allegations do not satisfy "the

14

stringent pleading requirements of [Federal] Rule [of Civil Procedure] 9(b), and this Court should similarly dismiss Plaintiff's fraud claim for the same reason." (Id. at 10.)

In response, Plaintiff states that Defendant is on notice of the precise conduct alleged pursuant to Federal Rule of Civil Procedure 9(b). (Doc. No. 7 at 11.) Plaintiff also claims that taking her alleged facts as true, she pleads the necessary elements of fraud. (Id. at 12.) She concludes her brief in opposition by arguing that "there is no ambiguity" in her complaint. (Id.)

Upon consideration of the complaint, the parties' briefing, and relevant authority, and taking all allegations to be true, the Court concludes that Plaintiff fails to put Defendant on notice as to the "precise conduct" she alleges as fraud. See Frederico, 507 F.3d at 200; see also In re Craftmatic Secs. Litig. v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989) (stating that Federal Rule of Civil Procedure 9(b) is to ensure "that defendants are placed on notice"). The Court notes that Plaintiff alleges the same misconduct under both Counts I and II. Compare (Doc. No. 1-1 at 12–13 ¶ 31 with Doc. No. 1-1 at 13–14 ¶ 34). As to her fraud claim, Plaintiff's complaint avers that:

> 34. [Defendant], through its agents, made materially false representations to [Plaintiff] and her agent, including, but not limited to:
>
> > a. Claiming that the application submitted in May of 2024 was incomplete, improper, defective and/or could not be acted upon by [Defendant];
> >
> > b. Claiming that the application submitted on July 29, 2024 was incomplete, improper, defective and/or could not be acted upon by [Defendant];
> >
> > c. Verbally telling [Plaintiff] in August of 2024 that her address had been changed and that she would soon be awarded coverage or receive a policy;
> >
> > d. Advising [Plaintiff's] daughter that [Plaintiff] needed to cancel the Mississippi policy;
> >
> > e. Advising [Plaintiff's] daughter that only a "licensed agent" in the sales department could change an address;

      f. Issuing a letter to [Plaintiff] advising her that [Defendant] was unable to process the application due to the reason listed on the letter, but providing no reason;

      g. Failing to adhere to the terms of its verbal and written representations and guarantees;

      h. Engaging in fraudulent and/or deceptive billing practices which created a likelihood of confusion and misunderstanding;

      i. Engaging in fraudulent and/or deceptive conduct which created a likelihood of confusion and misunderstanding by processing [Plaintiff's] premium payments without providing coverage;

      j. Accepting [Plaintiff's] monthly premium payments while refusing dental coverage; and

      k. Ignoring both applications.

See (Doc. No. 1-1 at 13–14 ¶ 34). The complaint further states that "said statements, assertions and/or representations were false and inaccurate and were knowingly, intentionally and willfully made with the intent to induce [Defendant] to continue paying premiums without coverage," and Plaintiff "justifiably relied" on these misrepresentations. (Id. at 14 ¶¶ 35–36.) The complaint also alleges that Plaintiff suffered a loss of "premium payments of $19.99 a month," "dental treatment," and "[t]he expenses of bringing this action to seek redress for the losses described herein, including attorney's fees." See (id. at 14 ¶ 38).

      Plaintiff's complaint fails to allege facts that support her contention that Defendant's agents' statements were "made falsely, with knowledge of its falsity and recklessness as whether it is true or false," and "with the intent of misleading another into relying on it." See Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994). Plaintiff's claim of fraud lacks "some measure of substantiation" as required by Rule 9(b)'s heightened pleading standard. See Frederico, 507 F.3d at 200. Plaintiff has failed to "adequately describe[ ] the nature and subject of the alleged misrepresentation" with sufficient detail. See In re Craftmatic Secs. Litig., 890 F.2d at 645.

In addition, likes a UTPCPL claim, a fraud claim requires a plausible allegation of justifiable reliance on the misrepresentation. See Gibbs, 647 A.2d at 889 (stating that an element of fraud is justifiable reliance); Horrell v. ABB Enter. Software, No. 20-cv-01454, 2021 WL 1103527, at *13 (M.D. Pa. Mar. 23, 2021) (stating that under Pennsylvania law, a claim of fraud requires a complaining party to act in justifiable reliance on the misrepresentation and that some injury result). For the same reasons articulated supra in connection with Plaintiff's UTPCPL claim, Plaintiff's complaint fails to plausibly allege that she acted or refrained from acting in reliance on any alleged misrepresentations to her detriment. Therefore, the Court will grant Defendant's motion to dismiss as to Plaintiff's fraud claim (Count II) and afford Plaintiff leave to amend her complaint in an attempt to cure the deficiencies outlined herein.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion, dismiss Counts I and II without prejudice, and grant Plaintiff leave to file an amended complaint. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
